UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                                                                         :

UNITY ELECTRIC CO. INC. *et al.*,                          :

                                                           Plaintiffs,                                  :

                                                                                                    :        22 Civ. 1066 (JPC)

                                 -v-                                                    :

                                                                                                    :        <u>ORDER OF TRANSFER</u>

MICRODESK, INC.,                                           :

                                                                         :

                                              Defendant.                                  :

                                                                                                    :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Before the Court is Defendant Microdesk Inc.'s motion to dismiss or transfer venue to the District of New Hampshire. Dkt. 24. As previously noted in the Court's August 4, 2023 Order, Dkt. 45, the venue selection clause in the relevant contracts—the Master Service Agreements— provides that "[i]n the event of any litigation between the parties, such litigation shall be commenced and maintained exclusively in the United States District Court for the residing District of the Microdesk office *in which the Services were contracted*." Dkt. 25-4 at 14 (emphasis added). For reasons set forth in that August 4, 2023 Order, the Court interprets that venue selection clause to require this action to be brought in the judicial district of the Microdesk office where the contract was formed—*i.e.*, where the "meeting of the minds" occurred. Dkt. 45 at 1-2. However, because the Court was unable to determine that point from the parties' briefing, the Court ordered the parties to submit supplemental declarations "providing additional details and information concerning the [contract negotiations], including how and when a final agreement on the contract language was reached, and by which employees." *Id.* at 3. Having now reviewed the parties' supplemental declarations, *see* Dkts. 51 ("Deft. Declaration"), 52 ("Pl. Declaration"), the Court concludes that the meeting of the minds occurred on Defendant's end in New Hampshire.

Defendant's Declaration is authored by Jody Reynolds, Defendant's Vice President for Consulting, Deft. Decl. ¶ 2, and confirms that even though the Master Service Agreements were executed by Gregory Lehrer, an employee in Defendant's New York office, the two employees who were responsible for approving the relevant contract terms were located in New Hampshire, *id.* ¶ 12. Reynolds avers that in her capacity as Vice President for Consulting, she is "ultimately responsible for approving all proposed service plans for potential new clients after [Microdesk's] sales teams develop initial strategies to deliver the work." *Id.* ¶ 2. Reynolds further states that "after [she has] approved a proposed service plan for a prospective client, the next step is to negotiate a fee for Microdesk's services," which is handled by the company's CFO, Darren End. *Id.* ¶ 3. Once Reynolds and End "have signed off on the fee structure, terms and conditions, and a staffing plan"—*i.e.*, all the material terms—"Microdesk prepares a contract with the pre-approved terms which is sent to the prospective client via Docu[S]ign." *Id.* ¶ 4; *see also id.* ¶ 12 ("Mr. Lehrer was not authorized to execute the contracts without approval from Mr. End and [Reynolds].").

That is how Defendant conducted the negotiations for the contracts that Plaintiffs alleged Defendant breached. *Id.* ¶¶ 5, 10. With respect to the first Master Service Agreement—the contract on which the subsequent agreements were based—sign-off on all material terms appears to have occurred on December 18, 2019. At 10:49 a.m. that morning, Janet Pincus, an Enterprise Account Executive in Defendant's New York office, told Brett Crossland, Plaintiff Unity Electric Co. Inc.'s Director of Technical Services, "I will send you our proposal through DocuSign shortly." Pl. Declaration, Exh. D at 2. After Reynolds and End signed off on the contract, Trena Metzger, another of Defendant's employees who also works in New Hampshire, sent the first Master Service Agreement to Crossland via DocuSign at 11:27 a.m. Deft. Declaration ¶ 6, Exh. A. Crossland confirmed receipt of the contract at 3:38 p.m. Pl. Declaration, Exh. D. While

Crossland had a conference call with Pincus and Lehrer to discuss the contract on January 9, 2020, *see id.* ¶ 13; Deft. Declaration, Exh. B at 3-5, neither party claims that any substantive changes to the contract were made following that meeting. Rather, Crossland countersigned the contract two days later on January 15, 2020. Pl. Declaration ¶ 15.[1]

Accordingly, because Defendant's employees who agreed to the terms of the Master Service Agreements, *i.e.*, Reynolds and End, were located in New Hampshire, the meeting of the minds occurred, on Defendant's end, in that state. As such, "the United States District Court for the residing District of the Microdesk office in which the Services were contracted" is the District of New Hampshire. Dkt. 25-4 at 14.

The Court further notes that it is confident that Plaintiffs were on sufficient notice of the possibility of venue for this lawsuit in the District of New Hampshire. The evidence suggests that Plaintiffs knew that the contracts needed to be approved by other employees of Defendant besides those who were coordinating with Plaintiffs. For example, while Crossland's "main points of contact with Microdesk during negotiation and execution . . . were Janet Pincus, Gregory Lehrer, and Brendan Gregory," Pl. Declaration ¶ 5, he received the first Master Service Agreement from Metzger, and Reynolds was cc'd on the message from Metzger to Crossland attaching the contract for him to sign, Deft. Declaration, Exh. A. Thus, it would have been clear to Crossland that other Microdesk employees—including employees working in New Hampshire—were involved in preparing and approving the contract.[2] In addition, prior to countersigning the first Master Service

---

[1] In fact, Crossland admits that the parties never discussed the venue selection provisions during any of their negotiations, further suggesting that there was a meeting of the minds as to that provision once Metzger sent the first Master Service Agreement to Crossland. *See* Pl. Declaration ¶ 42. While Crossland may not have assented to that provision until he countersigned the agreement, the contract was already agreed to and executed by Defendant. *See* Dkt. 25-1 at 7.

[2] It appears that a similar arrangement existed at Unity Electric. Crossland sent an email to Pincus stating that he needed to meet "with management" "to review [the] proposal," suggesting

3

Agreement, Crossland requested information regarding "who would be the billing entity responsible for services rendered by Microdesk." Deft. Declaration ¶ 8, Exh. B at 3 (Crossland informing Pincus that "[w]e need to set you up as a vendor and issue a [Purchase Order] based on the potential contract amount. Can you please send me all pertinent business info for the entity that will be billing us, i.e., legal company name, business address, phone number, etc."). After Pincus clarified whether she needed to provide her office information (in New York) or the "HQ address" (in New Hampshire), *id.*, Exh. B at 3, Crossland responded that she should provide the address "associated with payment, the remit address," to which Pincus provided Defendant's New Hampshire address, *id.* at 2. Crossland subsequently issued a purchase order which was addressed to Microdesk's New Hampshire office. *Id.*, Exh. C.[3] This evidence, combined with the inclusion of the venue selection clause in the contracts, indicates that Plaintiffs had sufficient notice that any lawsuit for breach of those contracts may need to occur in the District of New Hampshire.

Accordingly, for the reasons discussed in this Order and the Court's prior Order, Dkt. 45, Defendant's motion to transfer is granted. Because this case should be heard in another district, the Court does not reach the merits of Defendant's arguments in support of dismissal. *See* Dkt. 26 at 4-6. That portion of the motion is therefore denied without prejudice to being refiled in the District of New Hampshire in accordance with the rules of the judge to whom the case is ultimately assigned.

---

that he lacked the power to approve it on his own. Deft. Declaration, Exh. B at 5. Thus, it should have been conceivable to Crossland that Pincus too needed internal sign-off.

[3] In addition, all subsequent invoices were sent from Microdesk's New Hampshire office. *See* Dkt. 33-1; Pl. Declaration, Exhs. F, G.

4

      The Clerk of Court is respectfully directed to close Docket Number 24 and to transfer this case to the District of New Hampshire.

      SO ORDERED.

Dated: August 24, 2023  
      New York, New York

                                                  JOHN P. CRONAN  
                                          United States District Judge